Special Concurrence by Judge O’Scannlain; Dissent by Judge Ráwlinson OPINION O’SCANNLAIN, Circuit Judge: We must decide whether a conviction for .possession of a controlled substance with intent to distribute under Washington state law is an aggravated felony for purposes of federal immigration law.- I Jose Valdivia-Flores is a Mexican • citizen who entered the United States without inspection in 1995. In 1997, he was charged with and ultimately pled guilty to a violation of Washington’s drug trafficking statute, Wash. Rev., Code § 69.50.401. In his Statement of Defendant on Plea of Guilty, Valdivia-Flores described the crime he was being charged with as: “possession with intent to. deliver—Heroin.” He also wrote out the elements of the crime: “Possess a controlled substance (heroin) with intent to distribute it in King County and know it was a narcotic drug.” Finally, stating what made him guilty of Wash. Rev. Code § 69.50.401 in his own words, Valdi-via-Flores wrote: “On June 20, 1997 in King County WA I did unlawfully possess with intent to deliver Heroin a controlled substance and did know it Was a controlled substance.*’ Valdivia-Flores was sentenced to 21 months’ imprisonment, which ’ he served at an accelerated pace over seven months at a work ethic camp. While he was in the camp, immigration officers prepared a Notice to Appear which charged Valdivia-Flores with being removable. In an order dated January 28, 1998, an immigration judge suspended the immigration proceedings because Valdivia-Flores was still serving his sentence at the camp and therefore could not be produced for a hearing. Nonetheless, at the conclusion of his sentence in April 1998, immigration officers physically removed Valdi-via-Flores to Mexico without an order. Valdivia-Flores returned to the State of Washington that same year, again without inspection at the border. In 2009, Valdivia-Flores was convicted of malicious mischief in the third degree in violation of Wash. Rev. Code § 9A.48.090 for smashing the windshield of his wife’s vehicle after an argument. He pled guilty, and his sentence was suspended. At the time of that prosecution, the Department of Homeland Security initiated administrative removal proceedings pursuant to 8 U.S.C. § 1228(b). In March 2009, he received two copies of a form, one in English and one in Spanish, titled Notice of Rights and Request for Disposition. This notice informed Valdivia-Flores that he had “the right to a hearing before the Immigration Court to determine whether [he] may remain in the United States.” Valdivia-Flores filled out and signed the Spanish version of the form, electing to request a hearing before the Immigration Court. Also in March 2009, the Department of Homeland Security issued Valdivia-Flores a Notice of Intent to Issue a Final Administrative Removal Order (“Notice of Intent”). It stated that Valdivia-Flores’s 1997 conviction under Wash. Rev. Code § 69.50.401(a) was for an aggravated felony so that he was removable without a hearing before an immigration judge. The Notice of Intent informed Valdivia-Flores of his right to petition for review of his removal in the appropriate U.S. Circuit Court of Appeals. It also provided three check-boxes of options by which Valdivia-Flores could “contest [his] deportability”: (1) he could assert that he was “a citizen or national of the United States”; (2) he could assert that he was “a lawful permanent resident”; and (3) he could claim that he was “not convicted of the criminal offense described” in the Notice of Intent. Valdivia-Flores did not contest his removal or request withholding of removal and instead checked a box acknowledging that he had “the right to remain in the United States for 14 calendar days in order to apply for judicial review” and that he “waive[d] this right.” He did not petition for review of the removal decision and was removed on April 4, 2009. He remained in Mexico for a few days and then unlawfully reentered the United States for a third time. On August 13, 2013, Valdivia-Flores was arrested in Washington for being an illegal alien found in the United States, in violation of 8 U.S.C. § 1326. He pled guilty and was convicted in the Western District of Washington in September 2013. Immigration authorities once again initiated removal proceedings. Valdivia-Flores requested asylum and sought a stay of removal “for humanitarian reasons,” but those requests were denied, and Valdivia-Flores was removed in September 2014. On November 13, 2014, Valdivia-Flores attempted to return (for a fourth time) to the United States, applying for entry through the pedestrian lanes at the San Ysidiro, California port of entry. Valdivia-Flores falsely identified himself as another person and presented a false and fraudulent United States Certification of Naturalization. He was charged with one count of attempted reentry of a removed alien in violation of 8 U.S.C. § 1326 and one count of fraudulent use of an immigration document in violation of 18 U.S.C. § 1546. Prior to trial, Valdivia-Flores brought a collateral attack against the validity of his 2009 order of removal and moved to dismiss the attempted reentry count of the indictment. The district court denied the motion to dismiss because Valdivia-Flores “did in fact admit in his plea agreement to committing a drug trafficking offense, which is an aggravated felony.” The parties then entered into a stipulation in which Valdivia-Flores agreed to facts satisfying all the elements of both counts in the indictment. Based on those stipulated facts, following a bench trial the district court found Valdivia-Flores guilty of both charges and sentenced him to 21 months’ imprisonment on both counts, running concurrently. Valdivia-Flores filed this timely appeal and seeks to challenge collaterally the classification of his underlying Washington state conviction as an aggravated felony.[1] II Valdivia-Flores contends that because his 1997 conviction was incorrectly determined to be an aggravated felony, his 2009 removal was invalid. If the 2009 removal was invalid, that “precludes reliance on th[at] deportation” in the subsequent illegal reentry prosecution. United States v. Ramos, 623 F.3d 672, 679 (9th Cir. 2010). Valdivia-Flores’s collateral attack is governed by 8 U.S.C. § 1326(d), which allows such an attack to succeed if Valdiviar-Flores can demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the removal proceedings improperly deprived him of the opportunity for judicial review; and (3) the removal order was fundamentally unfair. 8 U.S.C. § 1326(d). The first two prongs of § 1326(d) are satisfied if his right to appeal was denied in violation of due process. United States v. Gomez, 757 F.3d 885, 893 (9th Cir. 2014). Valdivia-Flores contends that his due process rights were indeed violated because “immigration officials failed to obtain a knowing waiver of’ his right to appeal the removal order. Gomez, 757 F.3d at 893. “In order for [a] waiver to be valid ... it must be both considered and intelligent.” United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000) (internal quotation marks omitted). The government contends that Valdivia-Flores did validly waive his right to appeal by signing the Notice of Intent, by failing to appeal, and by freely choosing instead to return to this country unlawfully. Because Valdivia-Flores asserts that his waiver was not considered and intelligent, the government must show, by clear and convincing evidence that the waiver was valid, Ramos, 623 F.3d at 681, and it may not simply rely on the signed document purportedly agreeing to the waiver, Gomez, 757 F.3d at 895. Because we cannot rely on the contested waiver document itself, we evaluate the surrounding circumstances to determine whether the government can overcome the presumption against waiver. See Cisneros-Rodriguez, 813 F.3d at 756. Here, although the Notice of Intent described the window in which Valdivia-Flores could respond to the charges against him or file a petition for judicial review, it did not explicitly inform him that he could refute, through either an administrative or judicial procedure, the legal conclusion underlying his removability. In fact, the Notice of Intent’s three check boxes suggested just the opposite—that removability could only be contested on factual grounds. The list of options available to “check off’ did ■ not include an option to contest the classification of the conviction as an aggravated felony, and the only check box relevant to the conviction itself only allowed Valdivia-Flores to contest that- he “was not convicted of the criminal offense described.” The form’s deficiencies are magnified because Valdivia-Flores “was not represented and never had the benefit of appearing before an [immigration judge], who, we presume, would have adequately conveyed both [his] appeal options and the finality associated with waiving appeal.” Ramos, 623 F.3d at 681 (internal quotation marks omitted). Indeed, the Notice of Intent was issued without a hearing before an immigration judge despite Valdivia-Flores’s request for a hearing. The government provides no evidence that an immigration officer ever met with Valdivia-Flores to explain the form or the issues it raised; rather, the government merely relies on the sufficiency of the form’s text to communicate Valdivia-Flores’s options. Under these circumstances, we conclude that Valdivia-Flores’s waiver of the right to seek judicial review was not considered and intelligent. Accord Gomez, 757 F.3d at 896 (explaining that the fact that an alien signed a waiver was insufficient to meet the government’s burden to establish a valid waiver when the record reflected deficiencies in the advisements given). Therefore, he was deprived of due process and satisfies the first two prongs of 8 U.S.C. § 1326(d). Ill A With a due process violation established,, the next step in Valdivia-Flores’s argument is that the 2009 removal order “was fundamentally unfair,” so he satisfies the final prong of 8 U.S.C. § 1326(d) to succeed in his collateral attack. He must “show that it was ‘plausible’ that he would have received some form of relief from removal had his rights not been violated in the removal proceedings.” Gomez, 757 F.3d at 898 (quoting Arrieta, 224 F.3d at 1079). To meet that burden, Valdivia--Flores argues that, had he sought judicial review of the order, he would have prevailed in showing that he was not convicted of an aggravated felony as alleged in the Notice of Intent as the sole basis for his removal without a hearing before an immigration judge. The government disagrees and argues that Valdivia-Flores’s drug trafficking conviction was properly classified as an aggravated felony. We must therefore determine whether Valdivia-Flores’s 1997 conviction under Wash. Rev. Code § 69.50.401 -was for an aggravated felony. To determine whether an offense qualifies as an “aggravated felony,” we apply the categorical approach articulated in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Rendon v. Holder, 764 F.3d 1077, 1082 (9th Cir. 2014). Under the categorical approach, “we look not to the facts of the particular prior case, but. instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony.” Roman-Suaste v. Holder, 766 F.3d 1035, 1038 (9th Cir. 2014) (citation and internal quotation marks omitted). To make his argument that the Washington drug-trafficking law is broader than its federal analogue, .Valdivia-Flores observes that, under both the federal and state criminal laws, a person charged with a drug trafficking offense may be convicted either as a principal or for aiding and abetting. Critically, he says, Washington defines aiding and abetting more broadly than does federal law so that Washington forbids more conduct. The implicit nature of aiding and abetting liability in every criminal charge is sufficiently well-settled that the government in this case does not contest it. See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 189, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007) (In the United States, “every jurisdiction—all States and the Federal Government—has expressly abrogated the distinction among principals and aiders and abettors.”). Instead, the government contends that Washington’s definition of aiding and abetting liability is essentially the same as the federal definition so that they do, in fact, match categorically. At the time of Valdivia-Flores’s conviction, Washington’s aiding and abetting statute stated: “A person is an accomplice ... in the commission of a crime if ... [w]ith knowledge that it will promote or facilitate the commission of the crime, he ... solicits, commands, encourages, or requests such other person to commit it; or aids or agrees to aid such other person in planning or committing it.” Wash. Rev. Code § 9A.08.020(3)(a)(i)-(ii) (1997) (emphasis added). In contrast, under federal law, “to prove liability as an aider and abettor the government must establish beyond a reasonable doubt that the accused had the specific intent to facilitate the commission of a crime by someone else.” United States v. Garcia, 400 F.3d 816, 819 (9th Cir. 2005) (emphasis added). Therefore, federal law requires a mens rea of specific intent for conviction for aiding and abetting, whereas- Washington requires merely knowledge. Consistent with the Model Penal Code on which it is based, Washington’s criminal law expressly codifies the distinction between intent and knowledge and makes plain that knowledge is a less 'demanding mens rea requirement. “A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime.” Wash. Rev. Code § 9A.08.010(l)(a) (1997)' (emphasis added). In contrast, “[a] person knows or acts knowingly or with knowledge when ... (i) he is aware of a1 fact, facts, or circumstances or result described by a statute defining an offense; or (ii) he has information which would lead a reasonable man in the same situation to believe that facts exist-which facts are described by a statute defining an offense.” Id. § 9A.08.010(l)(b) (emphasis added). The same distinction exists in federal law, There, “a person who causes a particular result is said to act purposefully”—or with specific intent—“if he consciously desires that result ... while he is said to act knowingly if he is aware that that result is practically certain to follow from his conduct, whatever his desire may be as to that result.” United States v. Bailey, 444 U.S. 394, 404, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (internal quotation marks omitted); see also Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 739 (9th Cir. 2008) (distinguishing specific intent from “mere knowledge, or general intent”). Therefore, the Washington drug trafficking law* on its face appears to have a more inclusive mens rea requirement for accomplice liability than-its federal analogue. The Washington Supreme Court’s case law indicates that the distinction between intent and knowledge is meaningful.[2] See State v. Thomas, 166 Wash.2d 380, 208 P.3d 1107, 1111 (2009) (“To convict an accomplice of premeditated murder in the first degree, the State need not show that the accomplice had the intent that the victim would be killed. The prosecution need only prove that the defendant knew his actions would facilitate the crime .... ”); State v. Roberts, 142 Wash.2d 471, 14 P.3d 713, 731-32 (2000) (“The accomplice liability statute requires only a mens rea of knowledge .... [A]n accomplice, like a felony murder defendant, may be convicted with a lesser mens rea and a lesser actus reus than a principal to premeditated first degree murder.”); State v. Gocken, 127 Wash.2d 95, 896 P.2d 1267, 1273-74 (1995) (“Criminal conspiracy requires an element of intent, while accomplice liability requires a lesser culpable state of knowledge”). B The government’s principal response to this statutory language and case law is to cite contrary Washington case law that suggests accomplice liability turns on a mens rea standard closer to intent than knowledge. E.g., In re Welfare of Wilson, 91 Wash.2d 487, 588 P.2d 1161, 1164 (1979) (“[I]t is the encouragement plus the intent of the bystander to encourage that constitutes abetting.”); State v. Truong, 168 Wash.App. 529, 277 P.3d 74, 79-80 (2012) (“[T]he State must prove that the defendant ... shared in the criminal intent of the principal, thus demonstrating a community of unlawful purpose at the time the act was committed.” (internal quotation marks omitted)). The Washington Supreme Court cases the government cites, however, significantly predate the above-quoted authoritative interpretations by that court, and in some cases they even predate the 1976 enactment of Washington’s modern accomplice liability statute. The more recent state intermediate appellate court cases are also less authoritative than the clear statements of Washington’s highest court. We are satisfied that the government’s cited case law is less authoritative than the more recent Washington Supreme Court cases that indicate a clear distinction between the mental states of intent and knowledge. In the face of the clear statutory language and the most authoritative state case law, the government argues as a fallback that—even if there is a formal distinction between the state and federal mens rea requirements—in practice, Washington’s law does not “extend significantly beyond” its federal analogue for purposes of categorical comparison. Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815. Whatever the metaphysical merit of the government’s attack on the distinction between intent and knowledge, we have held that, “where, as here, a state statute explicitly defines a crime more broadly than the generic definition, no ‘legal imagination’ is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime.” United States v. Grisel, 488 F.3d 844, 850 (9th Cir. 2007) (quoting Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815). Because the difference in breadth is apparent on the face of the statute, we must conclude that Washington’s statute is broader than its federal analogue. Finally, the government makes a pragmatic argument that, under Valdivia-Flores’s proposed application of the categorical approach, “no Washington state conviction can serve as an aggravated’felony at all because of [the] accomplice liability statute” and that such a result “cannot have been Congress’s intent.” The government here merely joins a chorus of those who “have raised concerns about [the] line of decisions” applying the categorical approach, “[b]ut whether for good or for ill, the elements-based approach remains the law.” Mathis v. United States, — U.S. -, 136 S.Ct. 2243, 2257, 195 L.Ed.2d 604 (2016). Indeed, Justice Kennedy wrote separately in Mathis to note specifically that Congress “could not have intended vast ... disparities for defendants convicted of identical criminal 'conduct in different jurisdictions”; but he concurred in the opinion that held that the categorical approach required just that result. Id. at 2258 (Kennedy, J., concurring). As an inferior court, we must follow suit. Under a straightforward application of the categorical approach, Washington’s drug trafficking statute is overbroad compared to its federal analogue, and Valdi-via-Flores’s conviction cannot support an aggravated felony determination.[3] C The district court’s ruling, however, was based on a somewhat alternative analysis: applying the modified categorical approach, which permits a court to look at the documents of conviction. Using those, the district court determined that Valdi-via-Flores was, in fact, convicted as a principal rather than an accomplice and so fell within the federal generic drug trafficking prohibition. It is only “[i]n a narrow range of cases”’ however, “when the statute at issue is divisible,” that a court “may employ” the modified categorical approach to look at the underlying documents of conviction.[4] Ramirez v. Lynch, 810 F.3d 1127, 1131 (9th Cir. 2016). Where a “statutory phrase ... refers to multiple, alternative means of commission” of the crime, it must “be regarded as indivisible if the jurors need not agree on which method of committing the offense the defendant used.” Rendon, 764 F.3d at 1085. Washington law.is clear'that jurors need not agree. on whether a defendant is a principal or accomplice. See State v. Hoffman, 116 Wash.2d 51, 804 P.2d 577, 605 (1991) (“[I]t is not necessary that jurors be unanimous as to the manner of an accomplice’s - and a principal’s participation as long as all agree that they did participate in the .crime.”). Because a jury need not distinguish between principals and accomplices, the .drug trafficking statute is not divisible so far as the distinction between those roles is concerned, so the modified categorical approach may not be applied, and it was error for the district court to do so.[5] IV Because Valdiviar-Flores’s drug trafficking conviction does not qualify as an aggravated felony under the categorical approach, it cannot support the asserted basis for Valdivia-Flores’s 2009 removal. Valdiviar-Flores was therefore prejudiced from his inability to seek judicial review for that removal. He thus satisfies all three elements of 8 U.S.C. § 1326(d), and his collateral attack on the underlying deportation order should have been successful. The judgment of the' district court is therefore REVERSED and the case. REMANDED for further proceedings consistent with this opinion. . "We review the district court’s denial of a motion to dismiss an indictment brought pursuant to 8 U.S.C. § 1326(d) de novo.” United States v. Cisneros-Rodriguez, 813 F.3d 748, 755 (9th Cir. 2015) (citation omitted). Whether a crime constituted an aggravated felony is a question of law reviewed de novo. See Wang v. Rodriguez, 830 F.3d 958, 960 (9th Cir. 2016). . State statutes and the state court decisions interpreting them are both "authoritative sources of state law.” Mathis v. United States, — U.S. —, 136 S.Ct. 2243, 2256, 195 L.Ed.2d 604 (2016). . Our dissenting colleague rejects potential differences between Washington and federal aiding and abetting liability on the ground that we should look no further than the state statute defining the principal offense of drug trafficking, which does match its federal analogue. But as the dissent points out, “conviction of aiding and abetting is tantamount to conviction of the underlying offense.” It is for just that reason that, under the categorical approach, "the criminal activities of ... aiders and abettors of a generic” offense “must themselves fall within the scope of the [analogue] federal statute.” Duenas-Alvarez, 549 U.S. at 190, 127 S.Ct. 815. The test under Taylor is straightforward in this context: "[i]f the state statute criminalizes conduct that would not constitute a drug trafficking offense under federal ... law, then a prior conviction under that statute does not categorically qualify” as an aggravated felony. United States v. Valdavinos-Torres, 704 F.3d 679, 691 (9th Cir. 2012) (internal quotation marks omitted). Because the Washington statute does criminalize conduct that would not constitute a drag offense under federal law—due to the distinct aiding and abetting definitions—it is over-broad. That we have rejected an overbreadth challenge to this Washington statute before is irrelevant because such challenge was based on an argument unrelated to the overbreadth of the aiding and abetting component of the statute. See United States v. Burgos-Ortega, 777 F.3d 1047, 1052 (9th Cir. 2015) (considering an overbreadth challenge because the Washington statute did not include same exemption for "administering” a drag as its federal analogue). . The dissent argues "that documents in the record relevant to ValdiviarFlores’ conviction leave little doubt that he was convicted as a . .principal, and not as an accomplice.” We may not consider such documents, of course, if the statute is not divisible. . That conclusion comports with our prior holding regarding federal aiding and abetting liability outside of the immigration context, where we have held that "[a]iding and abetting ... is simply one means of committing a ... crime.” Garcia, 400 F.3d at 820.