NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 8 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50475 |
| Plaintiff-Appellee, | D.C. No.<br>3:16-cr-00022-LAB-1 |
| v. | |
| GUSTAVO VILLASENOR-BOTELLO, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50476 |
| Plaintiff-Appellee, | D.C. No.<br>3:16-cr-07062-LAB-1 |
| v. | |
| GUSTAVO VILLASENOR-BOTELLO, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted April 10, 2018
Pasadena, California

Before: BOGGS,** BYBEE, and WATFORD, Circuit Judges.

_____

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Gustavo Villaseñor-Botello appeals his conviction and sentence for attempted illegal reentry, in violation of 8 U.S.C. § 1326.  We affirm.

1. ***Motion to Dismiss***.  First, Villaseñor-Botello argues that the district court erred in denying his motion to dismiss the illegal-reentry charge.

The immigration judge ("IJ") who presided over Villaseñor-Botello's 2006 removal hearing concluded that he was statutorily ineligible for voluntary departure because he had been convicted of an aggravated felony, specifically a 48-month sentence for first-degree robbery in Washington.  *See* 8 U.S.C. § 1101(a)(43)(G); Wash. Rev. Code § 9A.56.200; 8 C.F.R. § 1240.26(b)(1)(i)(E).  Villaseñor-Botello claims that this was error because this conviction was not an aggravated felony.  *See United States v. Valdivia-Flores*, 876 F.3d 1201, 1210 (9th Cir. 2017).  But even if the IJ erred in finding Villaseñor-Botello statutorily ineligible for voluntary departure, the district court properly denied the motion to dismiss because it is not plausible that the IJ would have exercised her discretion to grant Villaseñor-Botello voluntary departure.  *See United States v. Gonzalez-Flores*, 804 F.3d 920, 927–28 (9th Cir. 2015).  Indeed, the IJ stated that she would not have granted Villaseñor-Botello voluntary departure had he been eligible for it.  She had ample grounds for coming to this conclusion, since Villaseñor-Botello had few positive equities to his

---

**   The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

2

credit and more than a few negatives ones, including recent convictions for several armed robberies. *See United States v. Valdez-Novoa*, 780 F.3d 906, 917–21 (9th Cir. 2015).

**2. *Requests for New Counsel.*** Second, Villaseñor-Botello contends that the district court abused its discretion in denying his requests to replace his federal public defenders with new appointed counsel. We disagree.

We consider three factors when reviewing a district court's denial of a motion for substitution of counsel: "1) the timeliness of the motion; 2) the adequacy of the district court's inquiry into the defendant's complaint; and 3) whether the asserted conflict was so great as to result in a complete breakdown in communication and consequent inability to present a defense." *United States v. Prime*, 431 F.3d 1147, 1154 (9th Cir. 2005). Although the first factor favors Villaseñor-Botello, the latter two do not.

The district court adequately inquired into the reasons that Villaseñor-Botello desired new counsel. The court's questioning, which took place over the course of several pre-trial hearings, revealed that Villaseñor-Botello wanted new counsel primarily because he had had a bad experience with a public defender in the past. The court was within its discretion in finding Villaseñor-Botello's generalized lack of trust in his attorneys to be an inadequate reason to appoint new counsel, since Villaseñor-Botello's past experience with public defenders was not a legitimate

3

reason for lacking confidence in his current counsel. *See United States v. Roston*, 986 F.2d 1287, 1292–93 (9th Cir. 1993). In sum, while the district court could have granted Villaseñor-Botello's timely requests for new counsel, it did not abuse its discretion in declining to do so because it thoroughly canvassed Villaseñor-Botello's reasons for his requests and appropriately decided that none of these were a valid justification for appointing new counsel.

**3. *Requests to Proceed Pro Se*.** Third, Villaseñor-Botello claims that the district court erred in failing to address his requests to proceed pro se.

The court committed no error because his requests were not explicit and unequivocal. *See United States v. Smith*, 282 F.3d 758, 763 (9th Cir. 2002). Villaseñor-Botello requested the opportunity to represent himself at a hearing on March 21, 2016. The district court scheduled a hearing on the matter for March 28, 2016, but that hearing appears never to have taken place. From what we can discern from the record, Villaseñor-Botello opted not to pursue his request to proceed pro se and instead filed several motions *in limine* through counsel on the day the hearing on his request was to take place. And contrary to his assertion on appeal, Villaseñor-Botello never made an explicit request to represent himself at a later hearing on May 31, 2016.

**4. *Federal Rule of Evidence 704(b)*.** Fourth, Villaseñor-Botello argues that the district improperly permitted the government's expert to twice opine at trial on

4

whether Villaseñor-Botello possessed the requisite mental state for attempted illegal reentry, in violation of Federal Rule of Evidence 704(b). Even assuming arguendo that the government's expert's testimony violated Rule 704(b), the district court's error in admitting this testimony was harmless, because a close review of the record reveals that it is more probable than not that the testimony did not materially affect the verdict. *See United States v. Torres*, 794 F.3d 1053, 1063 (9th Cir. 2015). Given Villaseñor-Botello's statements on the stand and during his recorded jail phone call, the jury had ample evidence to conclude that he had the specific intent to reenter the United States.

5. ***Evidence from Competency Evaluation.*** Fifth, Villaseñor-Botello argues that at trial the district court erroneously admitted evidence from a pre-trial competency evaluation, in violation of the Fifth Amendment, Sixth Amendment, and 18 U.S.C. § 4241(f).

Villaseñor-Botello's attorneys requested a competency evaluation of their client prior to trial. Villaseñor-Botello presented a mental-status defense to the jury, and the government used information from Villaseñor-Botello's competency evaluation for rebuttal purposes only after this defense had been presented. This was permissible under the Fifth Amendment and Sixth Amendment. *See Buchanan v. Kentucky*, 483 U.S. 402, 423–25 (1987); *Kansas v. Cheever*, 571 U.S. 87, 93–94 (2013); *Pawlyk v. Wood*, 248 F.3d 815, 825, 827 (9th Cir. 2001). It also complied

with 18 U.S.C. § 4241(f), since that statute bars the admission of a finding by the court that the defendant is mentally competent to stand trial. No such evidence was admitted in this case.

**6. *Sentence*.** Finally, Villaseñor-Botello appeals his 57-month sentence for his illegal-reentry conviction.

Under the 2015 Sentencing Guidelines, a conviction for illegal reentry carries a base offense level of eight. U.S. Sentencing Guidelines Manual § 2L1.2(a) (U.S. Sentencing Comm'n 2015). A defendant who has a prior conviction for an aggravated felony faces an increase of eight levels, § 2L1.2(b)(1)(C); a defendant who has a prior conviction for any other felony confronts an increase of only four levels, § 2L1.2(b)(1)(D). A defendant with a criminal history of VI—as Villaseñor-Botello has—and an offense level of sixteen faces a guidelines range of 46-57 months; a criminal history of VI and an offense level of twelve carries a guidelines range of 30-37 months.

Villaseñor-Botello argues that the district court calculated his guidelines incorrectly because after *Valdivia-Flores* his Washington conviction for first-degree robbery is not an aggravated felony. 876 F.3d at 1210. He contends that his offense level is therefore twelve rather than sixteen, which brings his guidelines range to 30-37 months.

Even if the district judge used the wrong guidelines range to arrive at his sentencing determination, the error was harmless because the judge "acknowledge[d] that the correct Guidelines range [was] in dispute and perform[ed] his sentencing analysis twice, beginning with both the correct and incorrect range." *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 n.5 (9th Cir. 2011) (per curiam). The district judge explicitly and adequately explained why he would impose a 57-month sentence regardless of whether the guidelines dictated a 46-57 month range or a 30-37 month range. *See id.* at 1031.

**AFFIRMED**.[1]

---

[1] We deny as moot the government's Oct. 25, 2017, motion to take judicial notice.

*United States v. Villaseñor-Botello*, Nos. 16-50475, 16-50476

WATFORD, Circuit Judge, dissenting:

I would reverse and remand for a new trial.  In my view, the district court abused its discretion by denying Gustavo Villaseñor-Botello's request for new counsel.

The district court made an adequate inquiry into the source of the conflict between Villaseñor and his lawyers from the Federal Defender's office.  The source of that conflict was easy to understand:  In an earlier criminal case in a different district, Villaseñor had a bad experience being represented by an attorney from a different Federal Defender's office, and he remained convinced that he had received deficient advice during the course of that representation.  As a result, he did not trust the public defenders who had been appointed to represent him in this case.  As one of his lawyers told the court, "he doesn't trust that what we are telling him is true.  He doesn't believe it."  The district court patiently tried to explain to Villaseñor that his distrust of the lawyers from the Federal Defender's office was irrational, and that they were highly skilled attorneys with special expertise representing defendants in cases like Villaseñor's.  But rightly or wrongly, Villaseñor was not persuaded.  His lawyers informed the court that, given "the state of the relationship we have right now, we don't feel that we can adequately represent him."

The district court denied Villaseñor's request for new counsel because the court did not believe he had given a good enough reason for distrusting his current counsel. In my view, though, it was not for the district court to decide that Villaseñor's distrust of public defenders was irrational and that he should (as the district court put it) simply "get over that." No one is suggesting that Villaseñor's inability to develop a relationship of trust and cooperation with his lawyers from the Federal Defender's office was manufactured. He wasn't feigning a problem communicating with his current counsel, as we sometimes see, as a means of provoking a delay in the start of his trial. Villaseñor made his request for new counsel at the outset of the case, a month before his trial was originally scheduled to begin. And this was his first request for a new lawyer. We are not dealing with a case in which a defendant has cycled through a succession of new lawyers, each time finding some reason to be dissatisfied with them. Villaseñor made one request at the start of the case for a new lawyer who was not from the Federal Defender's office. The district court had no sound reason for denying that request, even if the court doubted the wisdom or rationality of Villaseñor's general distrust of public defenders.

That Villaseñor was prejudiced by the district court's refusal to appoint new counsel cannot be doubted. He never did "get over" his distrust of the lawyers

from the Federal Defender's office, and he therefore did not communicate with them candidly about even the most basic matters necessary to allow counsel to adequately represent him. The most dramatic evidence of that came during trial, when Villaseñor announced without warning that he would be taking the stand to testify in his own defense. His lawyers had no opportunity to prepare Villaseñor beforehand and, not surprisingly, he made a series of damaging admissions on both direct and cross-examination that undermined the defense Villaseñor's lawyers had attempted to present on his behalf.

When a defendant does not trust his attorneys enough to tell them ahead of time that he plans to testify, I think it's fair to say there has been "a significant breakdown in communication that substantially interfered with the attorney-client relationship." *United States v. Velazquez*, 855 F.3d 1021, 1035–36 (9th Cir. 2017) (internal quotation marks omitted). I would reverse the conviction and remand for a new trial at which Villaseñor is represented by a lawyer who can adequately defend him.