**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 17-30011 |
| v. | D.C. No. 3:11-cr-05335-BHS-1 |
| ERIC QUINN FRANKLIN, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted May 14, 2018
Seattle, Washington

Filed September 13, 2018

Before: Marsha S. Berzon, Stephanie Dawn Thacker,[*]
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Berzon

---

[*] The Honorable Stephanie Dawn Thacker, United States Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

Vacating a sentence for being a felon in possession of a firearm and remanding for resentencing, the panel held that Washington's accomplice liability statute renders its drug trafficking law broader than generic federal drug trafficking laws under the Armed Career Criminal Act, and Washington's drug trafficking law is thus not categorically a "serious drug offense" under the ACCA.

### COUNSEL

Davina T. Chen (argued), Glendale, California, for Defendant-Appellant.

Michael Symington Morgan (argued) and Gregory Gruber, Assistant United States Attorneys; Hellen J. Brunner, First Assistant United States Attorney; Annette L. Hayes, United States Attorney; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

BERZON, Circuit Judge:

We consider whether Washington's broad accomplice liability statute renders an offense under its drug trafficking law categorically broader than a "serious drug offense," as that term is defined in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(A).

**I.**

In September 2013, a jury convicted Eric Franklin of being a felon in possession of a firearm, 18 U.S.C. § 922(g), and committing several drug trafficking crimes. Franklin appealed his convictions and sentence. This court affirmed Franklin's convictions but remanded for resentencing, holding that the district court had not given Franklin an adequate self-representation advisory under *Faretta v. California*, 422 U.S. 806 (1975).

The district court resentenced Franklin to fifteen years' imprisonment on the felon-in-possession offense.[1] The court calculated that sentence as the statutory minimum under the ACCA. It reasoned that Franklin had "three previous convictions . . . for a . . . serious drug offense," 18 U.S.C. § 924(e)(1), because he was convicted in Washington state court of three counts of unlawful delivery of a controlled

_____

[1] The district court also imposed a five-year sentence as to his remaining convictions. Franklin has not challenged that sentence on appeal.

substance, Wash. Rev. Code § 69.50.401.**²** Franklin timely appealed.

## II.

We start—and end—with Franklin's claim that Washington accomplice liability is a mismatch for the accomplice liability incorporated into the ACCA.

## A.

The ACCA imposes a fifteen-year mandatory minimum sentence on individuals convicted of being felons in possession of a firearm who have three prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). A "serious drug offense" is

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or

> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term

---

**²** In pertinent part, that statute provides that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Wash. Rev. Code § 69.50.401(1).

of imprisonment of ten years or more is prescribed by law . . . .

18 U.S.C. § 924(e)(2)(A).

Federal courts conduct a categorical inquiry into whether a prior state conviction qualifies as an ACCA predicate under § 924(e). *Mathis v. United States*, 136 S. Ct. 2243, 2247–48 (2016); *Taylor v. United States*, 495 U.S. 575, 600 (1990). Under that approach, "A prior conviction qualifies as an ACCA predicate only if, after comparing the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime—i.e., the offense as commonly understood[—]the statute's elements are the same as, or narrower than, those of the generic offense." *United States v. Jones*, 877 F.3d 884, 887 (9th Cir. 2017) (internal alterations and quotation marks omitted). If the elements of the state crime are broader than those of the generic crime, there is no categorical match and, absent application of the modified categorical approach,[3] the state crime cannot serve as a predicate conviction under the ACCA. *See United States v. Strickland*, 860 F.3d 1224, 1226–27 (9th Cir. 2017).

Under the categorical approach, we consider accomplice liability as an element when comparing the reach of state crimes and generic crimes. As the Supreme Court explained in *Gonzalez v. Duenas-Alvarez*, "one who aids or abets a [crime] falls, like a principal, within the scope of th[e] generic definition" of that crime. 549 U.S. 183, 189 (2007). To take theft as an example, "the criminal activities of . . .

---

[3] No party argues that the statutes before us are divisible, so we do not address the modified categorical approach. *See United States v. Martinez-Lopez*, 864 F.3d 1034, 1038–39 (9th Cir. 2017) (en banc).

aiders and abetters of a generic theft must themselves fall within the scope of the term 'theft' in the federal statute." *Id.* at 190. If a state's accomplice liability has "something special" about it, and thus "criminalizes conduct" that the comparable generic accomplice liability and the underlying crime, taken together, do not, there is no categorical match. *Id.* at 191 (emphasis omitted).

## B.

We recently considered, in *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017), whether Washington's accomplice liability statute renders its drug trafficking law categorically broader than a federal drug trafficking equivalent. *Valdivia-Flores* held that the Washington accomplice liability law was too broad, and thus that a conviction under Wash. Rev. Code § 69.50.401 does not categorically constitute an "illicit trafficking" offense and is not an "aggravated felony" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(B).[4] *Valdivia-Flores*, 876 F.3d at 1210.

To give shape to what constituted aiding and abetting "illicit trafficking" under the INA, *Valdivia-Flores* looked to federal criminal law. *Id.* at 1207. Specifically, it adopted the federal aiding and abetting standard, which requires the government to prove an accomplice has "*specific intent* to facilitate the commission of a crime by someone else." *Id.* (quoting *United States v. Garcia*, 400 F.3d 816, 819 (9th Cir.

---

[4] As relevant here, "[t]he term 'aggravated felony' means . . . illicit trafficking in a controlled substance (as defined in [21 U.S.C. § 802]), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B).

2005)). Washington law, by contrast, requires only that the government prove a person "[w]ith *knowledge* that it will promote or facilitate the commission of the crime, . . . solicits, commands, encourages, or requests [the principal] to commit it; or aids or agrees to aid [the principal] in planning or committing it." Wash. Rev. Code § 9A.08.020(3)(a)(i)–(ii) (emphasis added).

Specific intent and knowledge are distinct in this context. "*Intentionally* abetting the commission of a crime involves a more culpable state of mind than *knowingly* doing so, and it is unlikely that Congress intended the generic 'drug trafficking' listed in the INA to reach the less culpable conduct that the Washington statute criminalize[s]." *United States v. Verduzco-Rangel*, 884 F.3d 918, 923 n.3 (9th Cir. 2018). So, *Validivia-Flores* held, "[b]ecause the Washington statute *does* criminalize conduct that would not constitute a drug offense under federal law—due to the distinct aiding and abetting definitions—it is overbroad." 876 F.3d at 1209 n.3.

*Valdivia-Flores* cuts our path here. In that case, we reiterated that accomplice liability is woven into the fabric of all generic crimes. *Id.* at 1207. We looked to federal criminal law's concept of accomplice liability—including the required intent mens rea—to sketch the contours of a generic drug trafficking crime. *Id.* And we held that it is possible to violate the Washington statute as an accomplice with knowledge but not intent concerning the perpetrator's criminal activity. *Id.*

Franklin maintains that the same conclusion follows with regard to whether the *same* Washington statute at issue in *Valdivia-Flores* is a categorical match for the ACCA "serious drug offense," *i.e.*, "an offense under State law, involving

manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A).  So our question is: Is there any pertinent difference between the "serious drug offense" description in the ACCA and the generic "illicit trafficking" described in the statute analyzed in *Valdivia-Flores* that yields a different result here on the categorical match issue?

The government puts forth a variety of arguments as to why *Valdivia-Flores* does not control Franklin's case.  None is persuasive.

## C.

The government first contends we should not look to federal law to define the generic crime of aiding and abetting a "serious drug offense."  It maintains that *Valdivia-Flores* took its definition of accomplice liability from federal law only because the generic crime as defined in the INA arose out of a federal criminal statute, and that, here, a "serious drug offense" arises only out of state law.

*Valdivia-Flores* was not so limited.  It relied on federal law to supply accomplice liability elements for the entire "aggravated felony" definition at issue—a definition that refers both to federal drug crimes and to state law drug crimes that constitute "illicit trafficking."  *See* 8 U.S.C. § 1101(a)(43)(B) (defining a drug trafficking aggravated felony as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), *including* a drug trafficking crime (as defined in section 924(c) of Title 18)" (emphasis added)); *see also Verduzco-Rangel*, 884 F.3d at 921 (describing the "two possible routes for a state drug felony to qualify as a drug trafficking aggravated felony").

Nowhere did *Valdivia-Flores* suggest that its holding was limited to one portion of this definition. Rather, *Valdivia-Flores* held repeatedly and without limitation that the Washington drug trafficking statute "does not qualify as an aggravated felony under the categorical approach." 876 F.3d at 1210; *see also id.* at 1203, 1206, 1209.

Moreover, under the established methodology for applying the categorical approach to recidivism statutes, analogous federal law is always at least one aspect of the inquiry into the meaning of the description of a state offense in a federal statute. Here, that description is "serious drug offense," which, as *Duenas-Alvarez* held, and *Valdivia-Flores* reiterated, necessarily includes both principal and accomplice liability. So, as is usual, *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1084–85 (9th Cir. 2015), we look to a variety of sources—including federal statutes and case law, as well as treatises and any majority state law approach—to determine the generic federal crime, here, the federal definition of accomplice liability.[5]

In fact, when applying the categorical approach, we have recently looked principally to federal criminal law to supply definitions of generic inchoate crimes in both the Sentencing Guidelines and the INA, although those statutes themselves do not refer to specific federal crimes. *United States v. Brown*, 879 F.3d 1043, 1047–50 (9th Cir. 2018), for example, looked to federal conspiracy law to interpret the Sentencing Guidelines' generic definition of a "controlled substance

---

[5] "Generic federal crime" has become the term used in this context for what is essentially a task of statutory interpretation—*i.e.*, the task of deciding what the federal statute means when it uses certain language to describe a prior offense. That is how we use the term here.

offense"**6**; after doing so, *Brown* concluded that Washington's drug conspiracy law was broader than federal conspiracy law. And, of course, *Valdivia-Flores* took the same approach. In fact, the government has itself suggested that the panel look to federal criminal law to define *other* portions of the "serious drug offense" statute here at issue. So we need not, and do not, avert our eyes from federal accomplice liability when defining the scope of the ACCA's generic accomplice liability.

Further, if we were to look to other sources as well to supply a generic aiding and abetting definition for "serious drug offenses," we would reach the same result as did *Valdivia-Flores* when considering only federal law. Like the federal definition incorporated in *Valdivia-Flores*, general principles of accomplice liability establish that "[a] person is an 'accomplice' of another in committing a crime if, with the *intent* to promote or facilitate the commission of the crime," he commits certain acts; "a person's . . . knowledge that a crime is being committed or is about to be committed, without more, does not make him an accomplice." 1 Wharton's Criminal Law § 38 (15th ed.) (emphasis added). The Model Penal Code is similar: "A person is an accomplice . . . if . . . with the *purpose* of promoting or facilitating the commission of the offense, he" commits certain acts. § 2.06(3) (emphasis added).

---

**6** "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Federal law also comports with most other state definitions of accomplice liability. Franklin's brief calculates, with supporting documentation, that "Washington is one of at most five jurisdictions that requires only a mens rea of knowledge for accomplice liability." The government has not disputed this summary nor provided any conflicting information.

So, if we *also* look outside federal law to define generic aiding and abetting liability for purposes of the ACCA, we reach the same result as under *Valdivia-Flores*'s narrower, federal-law-centered, approach.

### D.

The government's second argument as to why the Washington accomplice liability standard is not a categorical match for the INA's "illicit trafficking," but is for the ACCA's "serious drug offense," is that, if we look to the text of the ACCA's "serious drug offense" definition, we'll discover that we need not incorporate accomplice liabilities into our categorical approach at all.[7] Not so.

---

[7] The government first developed this set of arguments in its supplemental briefing, following the issuance of *Valdivia-Flores*, not in its primary answering brief. Franklin maintains the arguments are therefore forfeited. We decline to find forfeiture. The government's categorical approach arguments largely arise out of the consequences of *Valdivia-Flores*, issued after the government submitted its answering brief. *See Louisiana-Pacific Corp. v. ASARCO Inc.*, 24 F.3d 1565, 1583 (9th Cir. 1994). In any event, Franklin had a full opportunity to respond to the government's arguments in his supplemental brief. *See Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 996 n.5 (9th Cir. 2007) (because arguably waived "issues [were] purely legal and were fully briefed by [the opposing party] . . . we exercise[d] our discretion to consider the[] arguments).

The government makes two textual arguments, one with vast implications for application of the categorical approach to a wide range of statutes, and one somewhat narrower. Most broadly, the government suggests that, because the ACCA defines a "serious drug offense" as "an offense *under State law,* involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," 18 U.S.C. § 924(e)(2)(A) (emphasis added), we need not define a generic crime *at all*. Instead, the government maintains, we simply look to see if the state law includes the words "manufacturing, distributing, or possessing," and, if so, we are finished.

To apply this expansive version of the government's theory would be to toss out all but the name of the categorical approach. At its core, the categorical approach is the comparison of the defendant's crime of conviction to a generic version of that crime—that is, a version that contains all of the ingredients Congress has identified, to which we give content using our full panoply of statutory interpretation resources. By so doing—"[b]y focusing on the legal question of what a conviction *necessarily* established[—]the categorical approach ordinarily works to promote efficiency, fairness, and predictability." *Mellouli v. Lynch*, 135 S. Ct. 1980, 1987 (2015); *see Taylor*, 495 U.S. at 590–92.

Put more simply, "[t]his categorical approach requires courts to choose the right category." *Chambers v. United States*, 555 U.S. 122, 126 (2009), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015). No matter how a statute is drafted, courts have applied the categorical approach to *some* generic—that is, *some* consistent and identifiable—criminal offense, with a definition and elements and limits. And, as *Duenas-Alvarez*

explained, "one who aids or abets a [crime] falls, like a principal, within the scope of th[e] generic definition" of a crime. 549 U.S. at 189. The government's words-only approach to inclusion of state laws in federal recidivism statutes is therefore dead on arrival.

The government's less ambitious textual argument starts from the observation that, under the ACCA, a "serious drug offense" can be either an offense defined under federal law, or, as relevant here, "an offense under State law *involving* manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . ." 18 U.S.C. § 924(e)(2)(A) (emphasis added). Focusing on the state law prong's use of the word "involving," the government notes that the statute at issue in *Valdivia-Flores* does not use the term "involving," and argues that that word here obviates any need for comparison to generic aiding and abetting liability. Instead, the government maintains, the elements of Franklin's state crime need only be examined to determine whether they "relate to or connect with" any act included as a "serious drug offense" (again, manufacturing, distributing, or possessing). On this understanding, according to the government, no inquiry is needed into whether the aiding and abetting version of the state crime categorically matches the generic crime of aiding and abetting the enumerated drug offenses.

This attempt to escape the result reached in *Valdivia-Flores* also does not work. We begin by observing that, as a linguistic matter, "involving" does not equate to "relating to or connecting with." "Relating to" is a "broad" and "indeterminate" term, *Mellouli*, 135 S. Ct. at 1990, that means that one thing "stands in some relation, bears upon, or is associated with" another, *United States v. Sullivan*, 797 F.3d

623, 638 (9th Cir. 2015) (quoting *United States v. Sinerius*, 504 F.3d 737, 743 (9th Cir. 2007)). "Involving" does not have a single, uniform meaning, but it usually signifies something narrower than "relating to." Specifically, "involving" often connotes "includ[ing] (something) as a necessary part or result." New Oxford American Dictionary 915 (3d ed. 2010).

This narrower meaning of the word "involving" is the one used in Supreme Court cases and our cases to connote application of the normal categorical inquiry—which, as we reaffirmed in *Valdivia-Flores*, requires a comparison of accomplice liabilities. For example, the Supreme Court has held that offenses that "involve fraud or deceit [are] offenses with elements that necessarily entail fraudulent or deceitful conduct." *Kawashima v. Holder*, 565 U.S. 478, 484 (2012) (internal quotation marks and alteration omitted). Therefore, *Kawashima* held, "[t]o determine whether the Kawashimas' offenses 'involv[e] fraud or deceit' . . . we employ a categorical approach." *Id.* at 483 (citing *Duenas-Alvarez*, 549 U.S. at 186).

The Supreme Court used a similar approach earlier. In interpreting the Racketeer Influenced and Corrupt Organizations Act's predicate offense provision, the Court held that the phrase any "act or threat *involving* . . . extortion, . . . which is chargeable under State law," 18 U.S.C. § 1961(1) (emphasis added), encompasses only state crimes "capable of being generically classified as extortionate." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003). According to *Scheidler*, the only crime that "involv[es] extortion" is generic extortion; the word "involving" does nothing to broaden the scope of that generic crime. *See id.* at 409–10.

Another example: In *Sullivan*, the defendant's state convictions "relate[d] to sexual abuse" because they criminalized conduct similar to the most important elements of sexual abuse. 797 F.3d at 641. But the convictions "involve[d] a minor or ward" because the conduct specifically included acts against a minor or ward. *Id.* at 640.[8]

Notably, the ACCA uses the term "involve" to describe both the "serious drug offense" *and* "violent felony" predicates. *See* 18 U.S.C. § 924(e)(2). Just as a "serious drug offense" can be "an offense under State law, *involving*" certain elements, a "violent felony" can be any crime that "*involves* use of explosives." 18 U.S.C. §§ 924(e)(2)(A), (e)(2)(B) (emphasis added). We have applied the standard categorical approach—not the broader, looser one envisioned by the government—to the ACCA's violent felony predicate, including its "involves use of explosives" predicate. *See United States v. Mayer*, 560 F.3d 948, 958–61 (9th Cir. 2009) (describing the categorical approach's application to the explosives prong of the definition of a violent felony). Thus a crime "involves use of explosives" where it actually constitutes the use of explosives; a crime *somewhat like* the use of explosives, or a crime *relating to* the use of explosives, does not necessarily "involve[] use of explosives."

There is no reason we would apply one interpretation of the word "involves" to "serious drug offenses" and a different

---

[8] As noted, *Sullivan* interpreted a federal recidivist statute, the meaning of which hinged on the broader term "relating to"—whether "the specific state offenses at issue [t]here . . . [were] categorically offenses '*relating to*'" the defined federal generic sexual abuse offenses. 797 F.3d at 640. Here, again, we are concerned with the narrower term "involving," which, unlike "relating to" in the categorical approach context, connotes a narrower application.

interpretation of the word to "violent felonies," as both predicate crimes are located in the same section of the ACCA. "Generally, identical words used in different parts of the same statute are presumed to have the same meaning." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006) (quotation marks and alterations omitted). That principle holds particularly true when, as here, the word "involve" is used in the *same* section of the same statute. *Cf. Sessions v. Dimaya*, 138 S. Ct. 1204, 1216–17 (2018) (plurality opinion) (explaining that the Supreme Court "'had good reasons' for originally adopting the categorical approach, based partly on ACCA's text (which, by the way, uses the word 'involves' identically [to a provision of the INA])" (quoting *Johnson*, 135 S. Ct. at 2562)).[9]

---

[9] The government cites several decisions of other circuits that, in interpreting this statute, equate the two terms "involving" and "relating to." *See United States v. Mulkern*, 854 F.3d 87, 90 (1st Cir. 2017); *United States v. Bynum*, 669 F.3d 880, 886 (8th Cir. 2012); *United States v. Vickers*, 540 F.3d 356, 365 (5th Cir. 2008); *but see Desai v. Mukasey*, 520 F.3d 762, 766 (7th Cir. 2008) (in the context of the INA, "[i]f Congress wanted a one-to-one correspondence between the state laws and the federal [generic crime], it would have used a word like 'involving' instead of 'relating to'"). We note that the cases holding that a "serious drug offense" constitutes any act to "intentionally enter the highly dangerous drug distribution world," *Bynum*, 669 F.3d at 886 (internal quotation marks omitted), may conflict with *Mellouli*'s rejection of a similar approach under the INA. *Mellouli* rejected the Eighth Circuit's holding that the term "relating to" in the INA incorporated any state crime "involving the drug trade in general." 135 S. Ct. at 1989.

In any event, those decisions do not address how the term "involving" affects the accomplice liability implied into the "serious drug offense" definition, no matter how broadly that generic crime is otherwise interpreted because of the "involving" predicate. So none addresses the issue before us or conflicts with the result we reach.

So, when we compare a state crime with a federal predicate "involving" certain crimes (here, certain drug-trafficking crimes), we do so categorically. That means we give content to the listed crimes—including their implied, inchoate aiding and abetting version—and determine whether elements of the state crime, *including* the inchoate versions, match the elements of the federal crime. *Valdivia-Flores* engaged in exactly that approach in determining what an "illicit trafficking" crime entails as a generic matter. Nothing about the ACCA's definition of a "serious drug offense," including its use of the word "involving," requires us to deviate from it.

## E.

To address a final government contention: Our holding today creates no conflict with the Eleventh Circuit's interpretation of a "serious drug offense" in *United States v. Smith*, 775 F.3d 1262, 1266–68 (11th Cir. 2014). *Smith* held that, unlike the INA's definition of a drug trafficking aggravated felony, "[n]o element of *mens rea* with respect to the illicit nature of the controlled substance is expressed or implied" in the ACCA's definition of a "serious drug offense." *Id.* at 1267.

Whether or not we agree with *Smith*'s interpretation of the ACCA is of no relevance here. In Franklin's case, we are concerned not with mens rea as to the illegal nature of a controlled substance, but instead with aiding and abetting a "serious drug offense," whatever drug is at issue. Our concern as to accomplice liability, distinct from the issue in *Smith*, is required by the Supreme Court under *Duenas-Alvarez*, 549 U.S. at 189–91, and, for the reasons surveyed, governed by *Valdivia-Flores*.

## III.

In sum, neither the categorical approach, nor *Valdivia-Flores*'s conclusion concerning Washington's broader-than-generic accomplice liability, lose force as they cross from one statute to another.     A conviction under Washington's accomplice liability statute renders its drug trafficking law broader than generic federal drug trafficking laws under the INA and, as we hold now, under the ACCA.  Washington's drug trafficking law is thus not categorically a "serious drug offense" under the ACCA.

Because Franklin's three convictions under Washington law could not constitute "serious drug offenses," he was not subject to the ACCA's fifteen-year mandatory minimum sentence, 18 U.S.C. § 924(e).  We thus vacate Franklin's sentence for being a felon in possession of a firearm and remand to the district court for resentencing as to that conviction.

**VACATED and REMANDED.**