**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MCKENZY ALII ALFRED,
*Petitioner*,

v.

MERRICK B. GARLAND, United States Attorney General,
*Respondent.*

No. 19-72903

Agency No.
A215-565-401

OPINION

Petition for Review from an Order of the
Board of Immigration Appeals

Argued and Submitted March 3, 2021
Seattle, Washington

Filed September 22, 2021

Before: Johnnie B. Rawlinson and Jay S. Bybee,
Circuit Judges, and Morrison C. England, Jr.,[*]
District Judge.

Opinion by Judge England;
Special Concurrence by Judge England;
Concurrence by Judge Rawlinson

---

[*] The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

## SUMMARY[**]

### Immigration

Granting McKenzy Alii Alfred's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that Petitioner's convictions for robbery in the second degree and attempted robbery in the second degree, in violation of Wash. Rev. Code §§ 9A.56.190, 9A.56.210 and 9A.28.020, do not qualify as aggravated felony theft offenses under 8 U.S.C. §§ 1101(a)(43)(G), (U).

The panel concluded it was bound by *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017), in which a divided panel determined that when considering the immigration effect of a Washington controlled substance conviction, accomplice liability is an implicit and indivisible component of the conviction that must be considered under the categorical approach. The *Valdivia-Flores* majority further concluded that the accomplice liability mens rea under Washington law (knowledge) is broader than that required under federal law (specific intent), and therefore, there could be no categorical match between the state statute of conviction and the generic federal definition of a drug trafficking crime.

Because, according to the *Valdivia-Flores* majority, it is well-established that aiding and abetting liability is implicit in every criminal charge, the panel explained that

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

accomplice liability must be considered here.  Observing that the *Valdivia-Flores* majority never reached the text of the drug trafficking statute, the panel concluded that its inquiry ended with accomplice liability as well.  To this effect, the panel concluded that the overbreadth of Washington's accomplice liability means there can be no categorical match to the generic federal offense in this case either, and Petitioner's second-degree robbery convictions cannot constitute aggravated felony theft offenses. Accordingly, the panel concluded that Petitioner was not removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

Specially concurring, District Judge England, joined by Judge Bybee, wrote that the panel relied on a theory of liability that assumes a crime was committed by someone else when it was undisputed that Petitioner himself— alone—committed the offense.  Judge England also explained that it is quite possible that, at least in similar cases, no Washington conviction can be an aggravated felony at all.  In such cases, future panels will never need to turn to the actual statute of conviction, but the exact same conduct may be an aggravated felony in a neighboring state. Judge England observed that Congress could not have intended such disparities.

Judge England wrote that the approach also puts attorneys in an untenable spot where they must argue against positions they would not normally advocate; the drive to show that state crimes of conviction are overbroad in comparison to their federal counterparts results in governments and prosecutors advocating for narrow readings of state criminal codes while defense counsel instead argue for expansion.  Judge England wrote that all the confusion left in the wake of the categorical approach

undermines the legitimacy of the third branch of government.

Concurring in the result, Judge Rawlinson wrote that she concurred in the result because, and only because, the result was compelled by the majority opinion in *Valdivia-Flores*. However, for the reasons explained in her dissent in *Valdivia-Flores*, Judge Rawlinson wrote that the conclusion that convictions for second degree robbery do not constitute aggravated felonies makes no sense legally or factually.

## COUNSEL

Aaron Korthuis (argued), Northwest Immigrant Rights Project, Seattle, Washington; Alison Hollinz, Northwest Immigrant Rights Project, Tacoma, Washington; for Petitioner.

Jaclyn E. Shea (argued), Trial Attorney; Zoe J. Heller, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

# OPINION

ENGLAND, District Judge:

Petitioner McKenzy Alii Alfred ("Petitioner"), a native and citizen of the Republic of Palau ("Palau"), petitions for review of an order of the Board of Immigration Appeals ("BIA" or "Board") that found him removable as an alien convicted of an aggravated felony offense. Because we are bound by the decision in *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017), we conclude that Petitioner's convictions for robbery in the second degree and attempted robbery in the second degree under Washington law do not qualify as aggravated felonies under §§ 101(a)(43)(G), (U) of the Immigration and Nationalization Act ("INA"), 8 U.S.C. §§ 1101(a)(43)(G), (U). The petition must therefore be GRANTED.

## I

### A.

In December 2011, Petitioner entered the United States from Palau pursuant to the so-called Compact of Free Association between the United States and several Pacific Island territories, including Palau.[1] Approximately seven

---

[1] Under the Compact, the Republic of the Marshall Islands, the Federated States of Micronesia, and Palau entered into an agreement with the United States allowing their citizens to enter, work, and establish residence in the United States without visas. *See* Compact of Free Association Act of 1985, Pub. L. No. 99-239, 99 Stat. 1770 (1986), amended by Compact of Free Association Amendments Act of 2003, Pub. L. No. 108-88, 117 Stat. 2720 (2003). Individuals so entering the United States, however, remain subject to removability on the same grounds applicable to other noncitizens. *See* Pub. L. No. 108-88 § 141(f), 117 Stat. at 2762.

years later, Petitioner pled guilty in Washington state court to one count of second-degree robbery and two counts of attempted robbery in the second degree in violation of Wash. Rev. Code §§ 9A.56.190, 9A.56.210 and 9A.28.020. According to his plea agreement, Petitioner—by himself—first tried to obtain cash from a teller at a credit union before going to a nearby coffee kiosk and taking money from the barista. He then attempted to carjack a vehicle operated by another third party. There was no evidence that anyone other than Petitioner committed these crimes, let alone any evidence that Petitioner acted as an accomplice to someone else, or was charged as an accomplice. Petitioner was eventually sentenced to fifteen-month concurrent terms of imprisonment on each count.

## B.

During Petitioner's incarceration, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") alleging that Petitioner was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because, *inter alia*, he had been convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(G). Specifically, in this case, Petitioner had been convicted of a theft or burglary offense for which the term of imprisonment is at least one year. *See* 8 U.S.C. § 1101(a)(43)(G).[2]

Petitioner admitted the factual allegations in the NTA, but nonetheless contested removability. At a hearing before an Immigration Judge ("IJ"), the IJ agreed with the

---

[2] The DHS ultimately added additional charges of removability, including charges that Petitioner had been convicted of aggravated felonies involving both violence and moral turpitude. The violence charges, however, were ultimately dismissed.

Government that Petitioner was indeed removable as having sustained theft-related aggravated felonies.[3]     The IJ's findings were subsequently memorialized in writing.

According to the IJ, this circuit's decision in *United States v. Alvarado-Pineda*, 774 F.3d 1198 (9th Cir. 2014), controlled.  In that case, another panel of this court held that the same state statute under which Petitioner was convicted was a categorical match to the INA's generic offense.  Since Petitioner, like Alvarado-Pineda, had unquestionably been sentenced to a term of imprisonment of more than a year for each of his convictions, the IJ determined that he had been convicted of aggravated felonies.[4]

The IJ was unpersuaded by Petitioner's claim to the contrary based on the split decision of a later panel in *Valdivia-Flores*.   There, the panel determined that when considering the immigration effect of a Washington conviction for possession of a controlled substance with intent to distribute, accomplice liability is an implicit and indivisible component of the conviction that must be considered under the categorical approach. *Valdivia-Flores*, 876 F.3d at 1207.   The majority concluded that the accomplice liability mens rea under Washington law is broader than that required to establish accomplice liability

---

[3] The IJ also sustained moral turpitude aggravated felony charges, but, as discussed below, the Board based its decision solely on the theft charges.  Accordingly, we also do not consider moral turpitude.

[4] In addition to finding second-degree robbery under Washington law to be an aggravated felony for INA purposes, the IJ further found that the same categorical match applied to Petitioner's two convictions for attempted robbery.  Because there is no dispute that the same analysis applied in both instances, we need not separately address attempted robbery here.

under federal law. *Id.* at 1208. This overbreadth, in the majority's view, meant there could be no categorical match between the state statute of conviction and the generic federal definition of a drug trafficking crime.[5] *Id.* at 1209. According to the IJ, *Valdivia-Flores* was nonetheless distinguishable because that case involved comparing the state offense to a federal generic offense defined by statute as opposed to an offense such as theft, which is defined with reference to federal case law.

The BIA affirmed, agreeing that the Washington statutes categorically qualified as aggravated felony theft offenses for immigration purposes, consequently rendering Petitioner removable. Petitioner then timely petitioned this court for review.

## II

This court has jurisdiction under 8 U.S.C. § 1252, and we "review only the BIA's opinion, except to the extent that it expressly adopted portions of the IJ's decision." *Rayamajhi v. Whitaker*, 912 F.3d 1241, 1243 (9th Cir. 2019) (citation omitted). Where the BIA concurs with the reasoning employed by the IJ's analysis, both decisions are reviewed. *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018). Otherwise, however, a reviewing court must "confin[e] [its] review to a judgment upon the validity of the grounds upon which the [agency] itself based its

---

[5] 8 U.S.C. § 1101(a)(43)(B) defines aggravated felony to include "illicit trafficking in a controlled substance (as defined in [21 U.S.C. § 802]), including a drug trafficking crime (as defined in [ 18 U.S.C. § 924(c)])." 18 U.S.C. § 924(c) defines "drug trafficking crime" to mean "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or chapter 705 of title 46."

action." *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). This means that we "may affirm the BIA based only on 'the explanations offered by the agency.'" *Toor v. Lynch*, 789 F.3d 1055, 1064 (9th Cir. 2015) (quoting *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008)).

An agency's legal determinations are generally reviewed "de novo, subject to established principles of deference." *Alanniz v. Barr*, 924 F.3d 1061, 1065 (9th Cir. 2019). Factual findings, on the other hand, are reviewed for substantial evidence. *Singh v. Holder*, 656 F.3d 1047, 1051 (9th Cir. 2011). Under the substantial evidence standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## III

### A.

An alien convicted of an "aggravated felony" at any time after entering the United States is subject to removal under the INA. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). DHS bears the burden of proving removability by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A). The INA defines an aggravated felony offense as, among other things, "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). The INA additionally makes it clear that an attempt or conspiracy to commit an aggravated felony under 8 U.S.C. § 1101(a)(43) is also deemed an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(U). If any of Petitioner's three state convictions qualify as an aggravated felony for INA purposes, the BIA's removability decision was proper, and the other offenses need not be considered. *See*, *e.g.*, *INS v.*

*Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

In evaluating whether a state statute qualifies as an aggravated felony for removal purposes, this court must "employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). The categorical approach requires comparison of "the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime" to determine whether the offense is an aggravated felony. *See Descamps v. United States*, 570 U.S. 254, 257 (2013).[6] Those statutory elements, and not the underlying facts of the particular crime involved, govern the inquiry into determining whether a categorical match is present. *See generally*, *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1567–68 (2017).

The relevant generic offense here, as indicated above, is "a theft . . . or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). The Ninth Circuit has defined generic "theft" for INA purposes as "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of the rights and benefits of ownership." *Alvarado-Pineda*, 774 F.3d at 1202 (quoting

---

[6] While *Descamps* was decided in the context of the Armed Career Criminal Act ("ACCA"), both the ACCA and the INA employ the same categorial approach in analyzing whether a conviction triggers either a fifteen-year mandatory minimum sentence under ACCA, *Mathis v. United States*, 136 S. Ct. 2243, 2247–48 (2016), or removal for immigration purposes under the INA in accordance with *Moncrieffe*, respectively.

*United States v. Corona-Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (*en banc*)).

Accordingly, if the required comparison between this generic federal offense and the Washington statute reveals a categorical match, then immigration consequences are triggered and, thus, Petitioner is removable. *See Roman-Suaste v. Holder*, 766 F.3d 1035, 1038 (9th Cir. 2014). If we conclude, on the other hand, that the state statute reaches conduct falling outside of the generic federal definition, then the Washington statute and generic federal offense are *not* a categorical match. In other words, if the elements of the state conviction are broader than the generic federal definition, then the state conviction is not an aggravated felony, and Petitioner is not removable on those grounds. *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986–88 (2015); *Descamps*, 570 U.S. at 257; *Ramirez v. Lynch*, 810 F.3d 1127, 1130–31 (9th Cir. 2016). Thus, in this case, our analysis begins and ends with *Valdivia-Flores*.[7]

## B.

The Washington statute underlying Petitioner's conviction provides:

---

[7] The Government's reliance on *Alvarado-Pineda* is misplaced because the impact of accomplice liability on the aggravated felony analysis was not raised therein. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *see also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (a court is free to address an issue on the merits, if that issue has not been "squarely addressed" by prior precedent). Given that *Valdivia-Flores* expressly addressed aiding and abetting liability, it binds us instead.

> A person commits robbery when he or she unlawfully takes personal property from the person of another in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone.

Wash. Rev. Code § 9A.56.190. Because, according to the *Valdivia-Flores* majority, it is well-established that aiding and abetting liability is implicit in every criminal charge, it must also be considered. *Valdivia-Flores*, 876 F.3d at 1207. The majority there explained how accomplice liability differs under the Washington statute as opposed to the generic federal definition:

> Washington's aiding and abetting statute state[s]: "A person is an accomplice . . . in the commission of a crime if . . . *[w]ith knowledge* that it will promote or facilitate the commission of the crime, he . . . solicits, commands, encourages, or requests such other person to commit it; or aids or agrees to aid such other person in planning or committing it." Wash. Rev. Code § 9A.08.020(3)(a)(i)–(ii) (1997) (emphasis added). In contrast, under federal law, "to prove liability as an aider and abettor the government must establish beyond a reasonable doubt that the accused had the *specific intent* to facilitate the commission of a crime by someone else." *United States v. Garcia*, 400 F.3d 816, 819 (9th Cir. 2005) (emphasis added). Therefore, federal law requires a mens rea of specific intent for

> conviction for aiding and abetting, whereas
> Washington requires merely knowledge.

*Id.*[8]  The difference between these mentes reae—specific intent and knowledge—matters, said the majority, because Washington's knowledge mens rea[9] captures more conduct than the federal specific intent mens rea, rendering accomplice liability in Washington overbroad compared to its federal counterpart.  *Valdivia-Flores*, 876 F.3d at 1207–08.  In that case, the overbreadth meant that "Washington's drug trafficking statute [was] overbroad compared to its federal analogue, and Valdivia-Flores's conviction [could] not support an aggravated felony determination."  *Id.* at 1209.

The *Valdivia-Flores* analysis binds us and requires that we consider and compare the mentes reae for accomplice liability here, albeit in reference to a different principal

---

**[8]** It is unclear how this last statement of the law (i.e., that federal law always requires specific intent for an aiding and abetting conviction) comports with the analysis set forth in *Rosemond v. United States*, 572 U.S. 65 (2014), a case not addressed by the *Valdivia-Flores* majority.  *See*, *e.g.*, *Bourtzakis v. United States Attorney General*, 940 F.3d 616, 623 (11th Cir. 2019) (concluding that based on *Rosemond* the Washington aiding and abetting mens rea is not significantly broader than the federal requirement).  Because we are bound by *Valdivia-Flores*, however, we make no attempt to reconcile these authorities here.

**[9]** Under Washington law, "[a] person knows or acts knowingly or with knowledge when: (i) [h]e or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or (ii) [h]e or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense."  Wash. Rev. Code § 9A.08.010.

offense.[10]  The *Valdivia-Flores* majority never reached the text of the drug trafficking statute in their analysis, and so our inquiry ends with accomplice liability as well.  The overbreadth of Washington's accomplice liability statute means there is no categorical match to the generic federal offense in this case either, and Petitioner's second-degree robbery convictions cannot constitute aggravated felony theft offenses.  Petitioner is therefore not removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

## IV.

We grant the petition and remand for further consideration by the agency.

**PETITION FOR REVIEW GRANTED, REMANDED.**

---

[10] Respondent's attempt to distinguish *Valdivia-Flores* because it compared a state statute to a federal statute as opposed to what we are asked to do here—which is to compare a state statute to a generic theft offense—is unavailing.  Respondent has not identified, nor have we found, any authority to suggest that this is a distinction with a difference.  Both require comparisons between the state statute and an enumerated offense.

We note that in *United States v. Door*, 917 F.3d 1146 (9th Cir. 2019), another panel of this court held that *Valdivia-Flores* did not apply to a categorical "crime of violence," and distinguished between enumerated offense aggravated felonies and "crime of violence" aggravated felonies for the purposes of sentence enhancement.  Because we are not faced with a "crime of violence" aggravated felony, we limit our analysis to aggravated felonies that require comparison to *enumerated offenses*, like 8 U.S.C. §§ 1101(a)(43)(B), (G).

ENGLAND, District Judge, with whom BYBEE, Circuit Judge, joins, specially concurring:

Our holding may be compelled by precedent, but it is not compelled by reason. To the contrary, this case, as have countless others, "demonstrates the absurdity of applying the categorical approach." *Quarles v. United States*, 139 S. Ct. 1872, 1880 (2019) (Thomas, J., concurring).[1]  Not only did

---

[1] Indeed, we are far from the only jurists to decry our continued reliance on this broken approach. *See, e.g.*, *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1149 (9th Cir. 2020) (Graber, J., concurring) ("I write separately to add my voice to the substantial chorus of federal judges pleading for the Supreme Court or Congress to rescue us from the morass of the categorical approach. The categorical approach requires us to perform absurd legal gymnastics, and it produces absurd results." (citations omitted)); *United States v. Escalante*, 933 F.3d 395, 406–07 (5th Cir. 2019) (Elrod, J.) ("In the nearly three decades since its inception, the categorical approach has developed a reputation for crushing common sense in any area of the law in which its tentacles find an inroad. . . . Perhaps one day the Supreme Court will consider revisiting the categorical approach and setting the federal judiciary down a doctrinal path that is easier to navigate and more likely to arrive at the jurisprudential destinations that a plain reading of our criminal statutes would suggest." (footnotes omitted)); *United States v. Williams*, 898 F.3d 323, 337 (3d Cir. 2018) (Roth, J., concurring) ("I write separately because of my concern that the categorical approach . . . is pushing us into a catechism of inquiry that renders these approaches ludicrous."); *Cradler v. United States*, 891 F.3d 659, 672 (6th Cir. 2018) (Kethledge, J., concurring) ("Whatever the merits of [the categorical] approach, accuracy and judicial efficiency are not among them . . . ."); *United States v. Brown*, 879 F.3d 1043, 1051 (9th Cir. 2018) (Owens, J., concurring) ("All good things must come to an end. But apparently bad legal doctrine can last forever, despite countless judges and justices urging an end to the so-called *Taylor* categorical approach."); *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 917 (9th Cir. 2011) (en banc) (Bybee, J.) ("In the twenty years since *Taylor*, we have struggled to understand the contours of the Supreme Court's [categorical approach] framework. Indeed, over the past decade, perhaps no other

we conduct an aggravated felony analysis without ever
addressing the principal statute of conviction, but the record
contains not even a hint that Petitioner might have pled
guilty as an accomplice.  In fact, quite the opposite, he very
clearly acted alone.  So what we have done today is rely on
a theory of liability that assumes a crime was committed by
someone else when it is undisputed that Petitioner himself—
and himself *alone*—committed the offense.    We are
engaging in an accomplice liability analysis that in any other
context would be utterly irrelevant.[2]

More distressing, of course, is the fact that our analysis,
and the analysis set forth in *Valdivia-Flores*, infects
countless Washington criminal statutes.    Indeed, as the
Government argued in that case, it is quite possible that, at
least for aggravated felonies that require comparison of all
elements of the state crime and an enumerated generic
federal offense, "no Washington state conviction can serve
as an aggravated felony at all because of [the] accomplice
liability statute." *Valdivia-Flores*, 876 F.3d at 1209.  Future
panels, like this one, will never even need to turn to the

---

area of the law has demanded more of our resources.").  This list is far
from exhaustive. *See, e.g.*, *United States v. Scott*, 990 F.3d 94, 125–27
(2d Cir. 2021) (Park, J., concurring) (collecting cases).  The author of
*Valdivia-Flores* himself wrote a special concurrence criticizing the
doctrine. *Valdivia-Flores*, 876 F.3d at 1210 (O'Scannlain, J., specially
concurring) ("I write separately to highlight how [this case] illustrates
the bizarre and arbitrary effects of the ever-spreading categorical
approach for comparing state law offenses to federal criminal
definitions.").

[2] All of this despite the fact that, as Judge Rawlinson observed in
her dissent to *Valdivia-Flores*, the majority "[c]ited no precedent [for]
skipping over the actual statute of conviction to plug a completely
different statute into the [categorical] analysis." *Valdivia-Flores*,
876 F.3d at 1213.

actual statute of conviction to determine one's status as an aggravated felon.  *Id.* at 1208–09.  Yet the exact same conduct may qualify as an aggravated felony in a neighboring state.

Congress "could not have intended vast . . . disparities for defendants convicted of identical criminal conduct in different jurisdictions."  *Mathis*, 136 S. Ct. at 2258 (Kennedy, J., concurring).  The most basic logic tells us this cannot be right but, as we have seen countless times, the categorical approach is untethered from common sense. Absurd results are far from an anomaly.**[3]**

---

**[3]** *See*, *e.g.*, *Quarles*, 139 S. Ct. at 1880 (Thomas, J., concurring) ("The categorical approach relies on a comparison of the crime of conviction and a judicially created ideal of burglary.  But this ideal is starkly different from the reality of petitioner's actual crime: Petitioner attempted to climb through an apartment window to attack his ex-girlfriend."); *Lopez-Aguilar*, 948 F.3d at 1149–50 (Graber, J., concurring) ("As the majority opinion explains, Oregon Revised Statutes section 164.395 is not a categorical match for the generic theft offense because it incorporates consensual takings.  But I can conceive of very few scenarios in which a defendant could use, or threaten the immediate use of, physical force against a third party while carrying out a taking that was consensual from the property owner's perspective."); *United States v. Battle*, 927 F.3d 160, 163 n.2 (4th Cir. 2019) (Quattlebaum, J.) ("Through the Alice in Wonderland path known as the 'categorical approach,' we must consider whether Battle's assault of a person with the intent to murder is a crime of violence. While the answer to that question might seem to be obviously yes, it is not so simple after almost 30 years of jurisprudence beginning with *Taylor*."); *United States v. Burris*, 912 F.3d 386, 407 (6th Cir. 2019) (en banc) (Thapar, J., concurring) ("A casual reader of today's decision might struggle to understand why we are even debating if ramming a vehicle into a police officer is a crime of violence. The reader's struggle would be understandable. The time has come to dispose of the long-baffling categorical approach."); *Ovalles v. United States*, 905 F.3d 1231, 1253

Our current approach also puts attorneys in an untenable spot—whether they are litigating regarding immigration or criminal consequences—where they must argue against positions they would not normally advocate. The drive to show that state crimes of conviction are overbroad in comparison to their federal counterparts results in governments and prosecutors advocating for narrow readings of state criminal codes while defense counsel instead argue for expansion. On this point, Judge Owens most aptly described this mad transposition in the context of federal sentencing:

> Here, one lawyer zealously argues that Washington law criminalizes a "conspiracy of one," while the other lawyer strenuously contends for a narrower reading. Surely, the prosecutor is the one swinging for the fences, and the defense attorney the one pushing for lenity. In state court, you would be right. But we are in federal court, so a defense attorney ethically must play the role of the aggressive prosecutor, pushing for the most expansive reading of state law possible. She succeeded: she has established that the state law is broader than the federal law, so there is no categorical match, which favors her client.

(11th Cir. 2018) (en banc) (Pryor, J., concurring) ("How did we ever reach the point where this Court, sitting en banc, must debate whether a carjacking in which an assailant struck a 13-year-old girl in the mouth with a baseball bat and a cohort fired an AK-47 at her family is a crime of violence? It's nuts. And Congress needs to act to end this ongoing judicial charade."); *United States v. Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring) ("[T]he categorical approach can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence.").

> But this role reversal confirms that this is a really, really bad way of doing things. Defense attorneys should not be forced to argue for expanding criminal liability to benefit their clients, but in the *Taylor* Upside Down, that is what necessarily happened here.

*Brown*, 879 F.3d at 1051 (Owens, J., concurring). Only in the "Upside Down" would this make any sense.

All of the confusion left in the wake of the categorical approach undermines the legitimacy of our third branch of government. We know that bad facts make bad law. But in the case of the categorical approach, bad law makes even worse law time and again. "Instead of wasting more resources and interjecting more uncertainty into our . . . decisions, either the Supreme Court or Congress should junk this entire system." *Id.*

---

RAWLINSON, Circuit Judge, concurring in the result:

I concur in the result reached by the majority because, and only because, the decision reached by the majority is compelled by the majority opinion in *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017). However, for the reasons explained in my dissent to the majority opinion in *Valdivia-Flores*, the conclusion that convictions for second degree robbery do not constitute aggravated felonies makes no sense legally or factually. I guess when it comes to application of the Supreme Court's contrived categorical approach, in the words of my dearly departed Mama Louise: common sense ain't all that common.